**IN THE COURT OF APPEALS OF IOWA**

No. 14-0489
Filed May 14, 2014

**IN THE INTEREST OF C.M.,**
**Minor Child,**

**J.M., Father,**
**Appellant,**

**A.A., Mother,**
**Appellant.**

_____

Appeal from the Iowa District Court for Cerro Gordo County, Annette Boehlje, District Associate Judge.

A father and mother separately appeal from the termination of their parental rights to their child. **AFFIRMED ON BOTH APPEALS.**

F. David Eastman, Clear Lake, for appellant father.

Richard N. Tompkins, Jr., Mason City, for appellant mother.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant Attorney General, Carlyle D. Dalen, County Attorney, and Nichole M. Benes, Assistant County Attorney, for appellee State.

Mark Young, Mason City, attorney and guardian ad litem for minor child.

Considered by Vogel, P.J., and Doyle and Mullins, JJ.

**DOYLE, J.**

A father and mother separately appeal from the termination of their parental rights to their child, C.M., born in June 2011. We affirm on both appeals.

## I.    *Background Facts and Proceedings*

This family came to the attention of the Iowa Department of Human Services (DHS) in July 2012,[1] following reports about the condition of the home and the parents' lack of mental health treatment. DHS initiated reunification services. DHS completed a child abuse assessment in August 2012, which resulted in a report that was founded against the parents for child abuse, denial of critical care, failure to provide adequate shelter. The child was dirty and the parents struggled to get him to scheduled doctor's appointments. The parents also struggled to attend appointments to address their mental health issues (the mother has low IQ and depression; the father has mood swings and anger problems)—a requisite to eliminating DHS's involvement with their family. Service providers expressed concerns that the parents left the child in his crib awake and unattended until late morning while they slept in.

The child was removed from the home in February 2013, due to continued concerns about the state of the home and the parents' unaddressed mental health issues. The child was adjudicated to be in need of assistance in March 2013.

---

[1] The mother's parental rights to another child were terminated in 2011.

The parents worked to address DHS's concerns, including attending counseling. The parents cleaned their home, including removing animal feces from the floor and storing small electronic parts and tools (*e.g.*, small screws, wire cutters, metal pieces, and box cutters) the father used in his fix-it business that the child—a mobile toddler—had access to. The child was returned to the parents' care.

Unfortunately, once the child returned to the home, the parents neglected the progress they had made. In June 2013, the child was removed from the parents' care, again due to the condition of the home and the parents' unaddressed mental health issues. The child has not returned to the parents' care.

After the second removal, the parents' cooperation decreased, and they did little to address DHS's concerns and work toward reunification. Even so, DHS increased the services provided to the parents. The parents made little to no progress and, in fact, additional concerns were raised. They were evicted from their home, and they stopped attending visitations with the child. The parents did not have access to phones, did not contact service providers, and stopped answering the door when they knew service providers were there.

The State filed a petition to terminate parental rights in December 2013. The termination hearing was held in March 2014. The juvenile court observed that in the prior three months the parents had attended only three visits—and missed around twenty visits—with the child. Nevertheless, the mother requested an additional six months to work toward reunification. She testified she was willing to take a break from the father and move in with a friend's adult daughter.

According to the mother and her friend, during a six-month extension the friend would help teach the mother to clean, cook, and live independently. The mother's friend testified they had thought of this plan on the morning of the termination hearing.

The juvenile court denied the mother's request for a six-month extension. The court entered its order terminating the father and mother's parental rights pursuant to Iowa Code sections 232.116(1)(e) and (h) (2013). The father and mother appeal.

## II.    *Scope and Standard of Review*

We review proceedings to terminate parental rights de novo. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). We give weight to the juvenile court's factual findings, especially when considering the credibility of witnesses, but we are not bound by them. *Id.* We will uphold an order terminating parental rights if there is clear and convincing evidence of grounds for termination under Iowa Code section 232.116. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). Evidence is clear and convincing when there are no serious or substantial doubts as to the correctness of conclusions of law drawn from the evidence. *Id.*

## III.    *Discussion*

On appeal, the father contends the statutory grounds for termination have not been met.[2] The mother challenges the juvenile court's refusal to grant her request for a six-month extension. We address each parent's appeal in turn.

---

[2] The father does not challenge the grounds for termination under section 232.116(1)(e) (providing grounds for termination when a child has been adjudicated in need of assistance, removed from the physical custody of the parents for at least six consecutive

## A.    The Father's Appeal

Termination may be ordered when there is clear and convincing evidence a child age three or younger, who has been adjudicated in need of assistance and removed from the parents' care for six of the last twelve months, cannot be returned to the parents' custody at the time of the termination hearing. *See* Iowa Code § 232.116(1)(h). There is no dispute the first three elements of section 232.116(1)(h) have been met—at the time of termination, C.M. was two years old, adjudicated CINA, and had been out of the parents' custody for six of the last twelve months. *See id.* § 232.116(1)(h)(1)-(3). The father's claim implicates the fourth element, *see id.* § 232.116(1)(h)(4) ("There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents . . . ."), as he contends "there's a lack of evidence to indicate the home and the child were not properly cared for so as to make the child safe."

Contrary to the father's contention, the record clearly supports the father's inability to provide a safe environment for the child. The concerns regarding the unsanitary and dangerous conditions of the parents' home, the inability of the parents to care for the child safely, and the parents' unaddressed mental health issues were initially raised in July 2012 and continued to exist at the time of the termination hearing in March 2014. During this time, numerous services were

---

months, and there is clear and convincing evidence that the parents have not maintained significant and meaningful contact with the child during the previous six consecutive months and have made no reasonable efforts to resume care of the child despite being given the opportunity to do so), and we therefore affirm termination of his parental rights under that section. Although "[w]e only need to find grounds to terminate parental rights under one of the sections cited by the district court in order to affirm its ruling," *see In re R.K.*, 649 N.W.2d 18, 19 (Iowa Ct. App. 2000), we elect to address the father's contention that statutory grounds under section 232.116(1)(h) have not been proved by clear and convincing evidence.

offered to the parents and, in fact, the child was able to return to their care for a brief time. After the child's second removal, however, the father essentially stopped cooperating with services. And significantly, in the three months preceding the termination hearing, the father made little to no effort to address the issues standing in the way of reunification.

This child is only two years old and deserves stability and permanency. The father is unable to assume custody of the child now or at any time in the foreseeable future. Under these facts and circumstances, we conclude there is clear and convincing evidence that grounds for termination exist under section 232.116(1)(h).

We further conclude termination of the father's parental rights would best provide for the child's long-term nurturing and growth under section 232,116(2), and termination is not prevented by a consequential factor under section 232.116(3). S*ee In re P.L.*, 778 N.W.2d 37, 40 (Iowa 2010). Accordingly, we affirm termination of the father's parental rights.

B.    *The Mother's Appeal*

The mother does not argue there are insufficient grounds for termination. Instead, she contends she should have been granted a six-month extension of time so that she could continue towards reunification with C.M. The district court denied the request due to the mother's minimal involvement with C.M. and service providers.

Section 232.104(2)(b) allows the district court to continue temporary placement of a child for six months provided the court is able to conclude the need for removal will no longer exist at the end of the six-month period. At the

time of the termination hearing, the mother had been receiving services for nearly two years yet there had not been any resolution to the concerns initially raised. As the juvenile court observed, the mother's plan for her friend to help her learn to live independently "was concocted the morning of TPR [hearing]." Yet the mother's friend testified she and the mother had "talked steadily" for months about the proceedings and the placement of the child outside the mother's home. The mother has shown a lack of interest in complying with many of the prerequisites for reunification, and testified she often did not even answer the door when she knew it was a service provider. There is nothing in the history of this case that would allow us to conclude the child could be placed with the mother within the next six months. We will not ask C.M. to wait while the prospects for the mother's improvement as a parent remain entirely speculative. *See D.W.*, 791 N.W.2d at 707 ("We do not gamble with the children's future by asking them to continuously wait for a stable biological parent, particularly at such tender ages.").

"It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *P.L.*, 778 N.W.2d at 41; *see A.B.*, 815 N.W.2d at 778 (noting a parent's past conduct is instructive in determining the parent's future behavior). Here, the mother is unable to assume custody of the child now or at any time in the foreseeable future. Children are not equipped with pause buttons. "The crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems." *In re A.C.*, 415 N.W.2d 609, 613 (Iowa

1987). There is no reason to delay the child the permanency he needs and deserves. Accordingly, we affirm termination of the mother's parental rights.

### IV. *Conclusion*

In regard to the father's appeal, there is clear and convincing evidence that grounds for termination exist, termination of parental rights is in the child's best interests, and no consequential factor weighing against termination requires a different conclusion. In regard to the mother's appeal, there is nothing in the record suggests an additional six months would correct the circumstances leading to the child's adjudication and removal. Accordingly, we affirm termination of the father and mother's parental rights.

**AFFIRMED ON BOTH APPEALS.**